IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MICHAEL MASON,                                                CV. 05-200 PK

                    Plaintiff,                    FINDINGS AND RECOMMENDATION

             v.

JOANNE B. BARNHART
Commissioner of Social Security,

                Defendant.

PAPAK, Magistrate Judge:

## **INTRODUCTION**

        Plaintiff, Michael Mason ("Mason"), brings this action pursuant to the Social Security Act, 42 USC § 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for Supplemental Security Income ("SSI") benefits.  For the reasons set forth below, the decision of the Commissioner should be affirmed and this matter should be dismissed.

1  - FINDINGS AND RECOMMENDATION

## PROCEDURAL BACKGROUND

In April 1992 Mason protectively filed an application for SSI disability benefits.  This application was denied initially and upon reconsideration in December 1992.  No hearing was requested, and the denial became a binding decision.

Mason protectively filed a second application for benefits on November 14, 1996, alleging disability since January 2, 1996, or June 1, 1996, due to pain in his lower back and legs, shortness of breath, depression, and cramps/spasms.  This application was denied initially and upon reconsideration.  On March 2, 1998, a hearing was held before an Administrative Law Judge ("ALJ").  In a decision dated May 15, 1998, the ALJ found Mason was not entitled to benefits.  After the Appeals Council declined review, Mason filed a complaint in this court.

On September 6, 2001, this court affirmed the ALJ's decision, however the Ninth Circuit Court of Appeals affirmed in part and reversed in part.   A supplemental hearing was held on October 4, 2004.  In a decision dated January 13, 2005, the ALJ found Mason not entitled to benefits. On March 8, 2005, the Appeals Council denied Mason's request for review, making the ALJ's decision the final decision of the Commissioner. Mason now seeks judicial review of the Commissioner's decision.

On May 9, 2001, Mason filed a third application for SSI disability benefits.  By decision dated January 21, 2003, the ALJ awarded Mason disability benefits for a closed period from August 16, 2000 to March 4, 2002.  This benefit award is not before the court.

## FACTUAL BACKGROUND

Born in 1954, Mason was 43 years old on the date of the first decision by an ALJ..  He completed high school and has past relevant work experience as a laborer, a truck loader and an

operating engineer.  The medical records submitted in this case accurately set forth Mason's

medical history as it relates to his claim for benefits. The court has carefully reviewed the

records, and the parties are familiar with them.  Accordingly, the details of those records will not

be recounted here.

## **STANDARDS**

A claimant is disabled if he or she is unable "to engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which . . . has lasted or

can be expected to last for a continuous period of not less than 12 months."  42 USC

§ 423(d)(1)(A).  The initial burden of proof rests upon the claimant to establish his or her

disability.  *Roberts v. Shalala*, 66 F3d 179, 182 (9th Cir 1995), *cert denied*, 517 US 1122 (1996).

The Commissioner bears the burden of developing the record.  *DeLorme v. Sullivan*, 924 F2d

841, 849 (9th Cir 1991).

The district court must affirm the Commissioner's decision if it is based on proper legal

standards and the findings are supported by substantial evidence in the record as a whole.  42

USC § 405(g); *see also Andrews v. Shalala*, 53 F3d 1035, 1039 (9th Cir 1995).  "Substantial

evidence means more than a mere scintilla but less than a preponderance; it is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion."  *Andrews*, 53

F3d at 1039.  The court must weigh all of the evidence, whether it supports or detracts from the

Commissioner's decision.  *Martinez v. Heckler*, 807 F2d 771, 772 (9th Cir 1986).  The

Commissioner's decision must be upheld, however,  if  "the evidence is susceptible to more than

one rational interpretation."  *Andrews*, 53 F3d at 1039-40.

/ / /

3  - FINDINGS AND RECOMMENDATION

## DISABILITY ANALYSIS

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act.  20 CFR § 416.920.  Below is a summary of the five steps, which also are described in *Tackett v. Apfel*, 180 F3d 1094, 1098-99 (9th Cir 1999):

Step One.  The Commissioner determines whether the claimant is engaged in substantial gainful activity.  If so, the claimant is not disabled.  If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate claimant's case under step two.  20 CFR § 416.920(b).

Step Two.  The Commissioner determines whether the claimant has one or more severe impairments.  If not, the claimant is not disabled.  If the claimant has a severe impairment, the Commissioner proceeds to evaluate the claimant's case under step three.  20 CFR § 416.920(c).

Step Three.  Because disability cannot be based solely on a severe impairment, the Commissioner next determines whether the claimant's impairment "meets or equals" one of the impairments listed in the Social Security Administration ("SSA") regulations, 20 CFR Part 404, Subpart P, Appendix 1.  If so, the claimant is disabled.  If the claimant's impairment does not meet or equal one listed in the regulations, the Commissioner proceeds to step four.  20 CFR § 416.920(d).

Step Four.  The Commissioner determines whether the claimant is able to perform work he or she has done in the past.  If so, the claimant is not disabled.  If the claimant demonstrates he or she cannot do work performed in the past, the Commissioner proceeds to step five. 20 CFR § 416.920(e).

Step Five.  The Commissioner determines whether the claimant is able to do any other work.  If not, the claimant is disabled.  If the Commissioner finds the claimant is able to do other work, the Commissioner must show a significant number of jobs exist in the national economy that the claimant can do.  The Commissioner may satisfy this burden through the testimony of a vocational expert ("VE") or by reference to the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2.  If the Commissioner demonstrates a significant number of jobs exist in the national economy that the claimant can do, then the claimant is not disabled.  If the Commissioner does not meet this burden,  the claimant is disabled.  20 CFR § 416.920(f)(1).

At steps one through four, the burden of proof is on the claimant.  *Tackett*, 180 F3d at 1098.  At step five, the burden shifts to the Commissioner to show that the claimant can perform jobs that exist in significant numbers in the national economy.  *Id*

## ALJ's DECISION

At step one, the ALJ found Mason had not engaged in substantial gainful activity during the period at issue, i.e., January 2, 1996 to August 16, 2000.  This finding is not in dispute.

At step two, the ALJ found Mason had the medically determinable severe impairments of degenerative disc disease, pain disorder, major depression and alcohol dependence in sustained partial remission. This finding is not in dispute.

At step three, the ALJ found that Mason's impairments did not meet or medically equal the criteria of any listed impairments.  The ALJ determined that Mason had the residual functional capacity to perform light work.  Mason could stand for two hours, walk five blocks, and sit for two hours at a time.  He could not reach overhead or repetitively crouch, kneel, or stoop.  This finding is in dispute.

At step four, the ALJ found that Mason could perform his past relevant work as a machine operator.  This finding is in dispute.  As a result, the ALJ found Mason not disabled within the meaning of the Act.

## DISCUSSION

Mason contends that the ALJ erred by:  (1)  finding him not fully credible;  (2)  rejecting the opinions of lay witnesses;  (3)  failing to find that he met or medically equaled Listing 1.04B;  (4) making a defective residual functional capacity finding; and (5)  finding him capable of performing his past work.

I.  The ALJ's Credibility Determination Is Supported by Substantial Evidence

Mason testified at his March 1998 hearing that he had worked as an operating engineer until 1986, when he went to truck driving school.  Tr. 53.[1] The operating engineer job  required sitting about one half the time, and standing and walking about half of the time.  Tr. 82-83.  The heaviest item he was required to lift was a wrench, but most of the time he did not have to lift anything.  Tr. 70.  The job entailed monitoring gauges and controls and doing some paperwork.  Tr. 81-82.  Mason left the operating engineer position because he wanted to become a truck driver.  Tr. 53.

Mason injured his back in November 1988 while loading trucks.  Tr. 54-55.  He received medical treatment, but continued to have back pain.  Tr. 55.  Mason worked at a warehouse running a conveyor belt for about six weeks in 1996.  Tr. 50-51.  He also worked for about three months in 1997 as a lead person in a warehouse doing paperwork and ensuring that shipments

---

[1]Citations are to the page(s) indicated in the official transcript of the record filed with the Commissioner's Answer.

6  - FINDINGS AND RECOMMENDATION

were made.  Tr. 51-52.  Mason testified that he earned  "something like $1,300" in 1996 and "probably about $2,000" in 1997.  Tr. 52.  He tried to work in 1998 but could not find work that would accommodate his limitations. Id.

Mason was unable to return to "blue collar" work because he could not lift, stand, or sit for long.  Tr. 62.  He testified that his legs and hips became painful if he sat for an hour.  Tr. 56. He also testified that he could sit in an office chair for "about an hour or two" without a break. Tr. 65.  Mason took eight Tylenol a day for his constant pain.  Tr. 56, 59, 63.  He changed positions and lay down occasionally.  Tr. 57.  Mason testified that he could stand for "an hour at the longest," and "a couple of hours at the most," and that he can lift ten pounds. Tr. 57, 65.

Mason had back cramps or spasms three or four times a week for ten minutes at a time, but had not sought medical treatment because of lack of insurance or income.  Tr. 58, 61.  When cramps or spasms occurred, he lay down and took over-the-counter pain medication.  Tr. 62.  He spent half his time lying down.  Tr. 66.

He also had numbness and cramping in his hands, and tingling up and down his left arm. Tr. 59, 68.  He loses his grip and drops things.  Tr. 59.  Mason had not sought medical care because he was unable to pay for treatment.

Mason testified that he had trouble sleeping because of pain.  Tr. 59.  His legs ached all the time.  *Id*  He had been depressed since about six months after his 1988 accident, and had crying spells three or four times a week.  Tr. 61, 64.  He has bad moods that cause friends and family to leave him alone about forty to fifty percent of the time.  Tr. 61.  Mason has shortness of breath that prevented prior activities.  Tr. 61.  Mason testified that it was difficult to climb or descend stairs, and that he could walk four to five city blocks without stopping to rest.  Tr. 64-

7  - FINDINGS AND RECOMMENDATION

65.  He had problems with stooping, bending, crouching, kneeling, and reaching because of pain

in his hip and lower back.  Tr. 67-68.  Pushing a lawn mower is difficult because he tires easily

and it makes his back and legs hurt.  Tr. 69.  His daily activities mainly involved sitting, lying

down, and watching television.  Tr. 58.  He did a little cooking and cleaning, but his girlfriend

did most of the household chores.  Tr. 58.

 The ALJ found that Mason was "not entirely credible in light of the work activity

reflected in his earnings record and his lack of treatment for his pain complaints."  Tr. 329.  The

ALJ stated:

> There is no evidence of any medical treatment since 1993.  He takes only
> Tylenol for his pain.  The claimant testified that he has no insurance, but
> he reported to Dr. Gostnell that his worker's compensation claim was still
> open for related medical treatment.  He also reported to Dr. Gostnell that
> he would go to the hospital for shots and medications when his legs went
> numb but indicated he had not had to do this for 2 or 3 years [citation
> omitted].  There is no medical evidence of an impairment which would
> result in hand numbness or weakness.  He has not sought treatment for
> this condition.  The claimant's lack of treatment is not consistent with his
> allegations of debilitating pain.  The claimant has also received no treat-
> ment for complaints of depression.  He has not sought mental health
> treatment and takes no medications for depression.

> While the claimant may rest and nap during the day, there is no evidence
> that this is a medical necessity.  In light of his degenerative disc disease,
> we accept his testimony that he has difficulty sitting more than 2 hours,
> standing more than 2 hours and walking more than 5 blocks.  However,
> in light of his lack of treatment for complaints of pain and extensive work
> activity, we find no evidence that he must lay down or recline during the
> day.

/ / /

/ / /

/ / /

 Despite his complaints of pain and depression, the claimant has performed

extensive work.  He earned $10,789 in 1997, contrary to his testimony that he probably earned about $2000.  He continued to work after 1997, earning $6428 in 1998, $9795 in 1999 and $7118 in 2000.  According to the Administrative Law Judge decision on the claimant's subsequent application, he suffered an on-the-job injury on August 16, 2000 when lifting an object weighing 90 pounds.  The credibility of the claimant is undermined by his failure to report his extensive work activity.

Tr. 329-30.

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.  *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995).  However, the ALJ's findings must be supported by specific, cogent reasons.  *Reddick v. Chater,* 157 F.3d 715, 722 (9th Cir. 1998).  Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reason for rejecting the claimant's testimony must be "clear and convincing."  *Id.*  The ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.  *Id.*  The evidence upon which the ALJ relies must be substantial.  *Reddick,* 157 F.3d at 724.  *See also Holohan v. Massinari,* 246 F.3d 1195, 1208 (9th Cir. 2001).  General findings (e.g., "record in general" indicates improvement) are an insufficient basis to support an adverse credibility determination.  *Reddick* at 722;  *see also Holohan,* 246 F.3d at 1208.  The ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony.  *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir. 2002).

The ALJ may consider:  (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the

claimant's daily activities; (4) the objective medical evidence;  (5) the location, duration,

frequency, and intensity of symptoms; (6) precipitating and aggravating factors; (7) the type,

dosage, effectiveness, and side effects of any medication; and (8) treatment other than

medication.   20 CFR § 416.929.

In deciding whether to accept a claimant's subjective symptom testimony, "an ALJ must

perform two stages of analysis:  the *Cotton* analysis and an analysis of the credibility of the

claimant's testimony regarding the severity of her symptoms [footnote omitted.] *Smolen v.*

*Chater,* 80 F.3d 1273, 1281 (9th Cir. 1996).

> Under the *Cotton* test, a claimant who alleges disability based
> on subjective symptoms "must produce objective medical evi-
> dence of an underlying impairment which could reasonably
> be expected to produce the pain or other symptoms alleged...."
> *Bunnell,* 947 F.2d at 344 (quoting 42 U.S.C. § 423(d)(5)(A)(1988));
> *Cotton,* 799 F.2d at 1407-08.  The *Cotton* test imposes only two
> requirements on the claimant:  (l) she must produce objective
> medical evidence of an impairment or impairments; and (2) she
> must show that the impairment or combination of impairments
> *could reasonably be expected to* (not that it did in fact) produce
> some degree of symptom.  *Smolen*, 80 F.3d at 1282 (italics in
> original).

Mason contends that the ALJ's credibility findings were not supported by substantial

evidence.  He argues that the reasons provided by the ALJ for discrediting his complaints were

inadequate.  Specifically, Mason argues that he failed to seek treatment for his pain because his

doctors had advised him that there was no further medical treatment that would relieve the pain,

he did not want to become addicted to pain medications, and he lacked income or insurance.

Mason cites the dissenting opinion in a case arising in the Eighth Circuit Court of Appeals for

the proposition that a failure to seek prescription pain medication does not undermine credibility

as to pain.  *Hall v. Chater*, 109 F3d 1255, 1260 (8th Cir. 1997).

10  - FINDINGS AND RECOMMENDATION

However, the ALJ is permitted to consider lack of treatment in a credibility determination. *Burch v. Barnhart,* 400 F3d 676, 681 (9th Cir 2005). Mason reported to David Gostnell, Ph.D., in February 1997 that his 1988 worker compensation claim was still open for related medical treatment. However, he has never sought or received treatment for depression.

The ALJ considered the objective medical findings in discounting Mason's testimony. He noted that Mason alleged severe low back pain since 1988, but that MRI and x-rays showed only mild degenerative disc disease at L5-S1. There was no evidence of nerve root compression. Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis. *Id.*

The ALJ correctly noted that, despite Mason's assertions, there was no medical evidence of any impairment which would result in hand weakness or numbness. There is no evidence that Mason ever sought medical treatment for hand weakness or numbness or depression.

Finally, the ALJ noted that Mason had dramatically understated the amount of work that he was able to do in 1997, 1998 and 1999. Mason's 2000 injury while attempting to lift a ninety pound object is not consistent with his allegations of disabling back pain. Mason's lack of credibility as to his work experience undermines his credibility as to his pain.

The record contains other evidence to support the ALJ's credibility determination. J.W. Stewart, M.D., examined Mason in March 1989. Tr. 252. Dr. Stewart stated "[T]his man exhibits a fair amount of interference and inconsistencies during his examination, suggesting that psychological factors are interfering with recovery. His subjective symptoms far outweigh any specific objective findings." In April 1989 David W. Rich, M.D., a neurologist, and Norman Logan, M.D., an orthopaedic surgeon, examined Mason. They found "no evidence of an

impairment from a neurologic or orthopaedic standpoint," and concluded that "he can return to

the same occupation without limitations."  Tr. 255-56.  In May 1989 Mason was examined by

Rena F. Sandler, D.C.  Tr. 262.   He was referred to physical therapy, but discharged in

September 1989 for failure to cooperate.  Tr. 280-81.  He was discharged again from physical

therapy in September 1990  "because he is unable to make consistent appointments.  He has been

in our program before, and this was a problem earlier."  Tr. 222.  A December 1991 Physical

Capacities Evaluation by Occupational Therapist Cynthia J.  Alvarado, M.S. concluded:

> Mr. Mason was observed to be considerably pain focused....His
> symptoms appeared somewhat disproportionate to the type of
> activities performed, and it did not appear that Mr. Mason was
> demonstrating his maximum effort during lifting activities, based
> on the numerous pain complaints he reported.  Therefore, rating
> Mr. Mason according to a physical demand category is based on
> his demonstrated capacities which are in the sedentary-light work
> range....Although he went through rehabilitation, he has been un-
> able to maintain his home exercise program due to the considerable
> pain that he experiences on a daily basis.  Treatment recommenda-
> tions appear limited primarily due to Mr. Mason's poor follow
> through on his exercise program.

Tr. 190.

Finally, Mason admitted taking more prescription pain medication than he was

prescribed "at least three days a week" to James B. Powell, Ph.D., in September 1996.  Tr. 146.

Dr. Powell diagnosed polysubstance dependence; adjustment disorder, with depressed mood;

alcohol dependence, sustained partial remission; and assessed a Global Assessment of

Functioning ("GAF")[2] score of 55.  Dr. Powell said it appeared that Mason had "given himself

---

[2]  The GAF scale is a tool for "reporting the clinician's judgment of the individual's
overall level of functioning."  American Psychiatric Ass'n., Diagnostic and Statistical Manual of
Mental Disorders 32 (4th ed. 2000)).  It is essentially a scale of zero to 100 in which the clinician
considers "psychological, social, and occupational functioning on a hypothetical continuum of

12  - FINDINGS AND RECOMMENDATION

over to feelings of despair and depression and almost seems resigned that he cannot function

better." Tr. 152. He opined that Mason had developed an addiction to prescription medication

that could be a factor lowering his level of motivation to seek ways of improving his condition.

*Id*

The ALJ articulated several specific, clear, and convincing reasons for partially rejecting

Mason's pain testimony. His determination as to Mason's credibility is supported by substantial

evidence and should be affirmed.

II. The ALJ Gave Proper Weight to the Lay Witness Testimony

Mason's father, Trevol Mason, testified that he sees his son two to three times a week.

Tr. 72. He stated that his son "limps a lot," and "kind of wobbles" sometimes when he walks.

*Id* The senior Mason said that his son has trouble reaching up to lift things over his head, and

drops things "once in a while." *Id* Mason stated that his son was in pain "maybe most of the

time," and that he wears out easily. Tr. 73. Mason was able to mow the lawn for about thirty

minutes before resting for 15 or 20 minutes "then he'll be ready to go back." Tr. 74. Mason

stated that his son was easily upset, and "quite often" became irritable. *Id*

Rhonda Collins testified that she had known Mason for 16 years, and had seen him every

day for the last couple of years. Tr. 76. As to his ability to walk, Collins said "I noticed him

limp. He gets a little, he walks a little slower than, than he used to." *Id* Collins testified that

Mason dropped things and had trouble "picking up like phone books and things like that."

---

mental health-illness," not including impairments in functioning due to physical or
environmental limitations. *Id* at 34. A Global Assessment of Functioning ("GAF") score
between 41 and 50 indicates "Serious symptoms (e.g. suicidal ideation, severe obsessional
rituals, frequent shoplifting) or any serious impairment in social, occupational or school
functioning (e.g., no friends, unable to keep a job)." *Id* at 32.

13  - FINDINGS AND RECOMMENDATION

Collins estimated that Mason was in pain about fifty percent of the time, and that normal daily activities, like making the bed and washing dishes wore him out.  Tr. 77.  Collins testified that Mason could wash the dishes for about fifteen minutes before resting for a half an hour.  *Id* She estimated that he worked at a pace less than half as fast as other people, but had no mental or emotional problems.  Tr. 78.

 The ALJ stated:

> The allegations of Mason and Ms. Collins are not entirely credible in light of the claimant's work activity and lack of treatment.  He has not sought any treatment for hand problems.  He has not sought any treatment for pain complaints since 1993.  He takes no pain medication other than over-the-counter Tylenol.  His minimal treatment is not consistent with an inability to perform household tasks without frequent rest periods.  Although the claimant's father reported he is irritable and emotional, Ms. Collins testified that she had noticed no mental or emotional problems.

Tr. 330.

 An ALJ "can reject the testimony of  lay witnesses only if he gives reasons germane to each witness whose testimony he rejects."  *Smolen v. Chater*, 80 F3d 1273, 1288 (9th Cir 1996).

 Mason argues that his unsuccessful prior work attempts do not negate the lay witness testimony because neither witness testified that Mason is bedridden or precluded from all activities.  However, both lay witnesses testified  at the March 1998 hearing to limitations inconsistent with Mason's actual work activities, from which he reported income of $10,789 in 1997.  In addition, Collins' testimony regarding emotional and mental limitations was contrary to the testimony of Mason and his father. The ALJ found the lay witness testimony credible, but not as to the issue of disability.  The ALJ identified germane reasons to reject the lay witness

testimony to the extent that it suggested Mason was disabled.  The ALJ's determination as to the

lay witness testimony is supported by substantial evidence and should be affirmed.

III.  The ALJ Properly Determined Mason's Residual Functional Capacity

Mason contends that the ALJ improperly determined his residual functional capacity

("RFC").  A claimant's RFC is the most he can do despite his limitations.  20 CFR § 416.945.

The ALJ must consider all relevant evidence in the record, and must explain how the evidence

supports his RFC assessment by assessing the claimant's physical and mental limitations and his

ability to work on a regular and continuing basis, defined as eight hours a day, five days a week.

*Id*

The ALJ found that Mason retained the RFC to lift 20 pounds occasionally and 10

pounds frequently, that he could not stand more than two hours or walk further than five blocks.

The ALJ found that Mason was unable to sit longer than two hours at a time, perform overhead

reaching or repetitive crouching, kneeling or stooping.  Tr. 331.  The ALJ stated:

> Sharon Johnson, M.D., a state agency consultant, opined that the
> claimant could lift 20 pounds occasionally and 10 pounds frequently.
> He could stand and walk 6 hours out of an 8-hour day and sit 6
> hours out of an 8-hour day.  He could occasionally crouch. [Cita-
> tion omittted.]  Peter LeBray, Ph.D., a state agency consultant, opines
> that the claimant is capable of understanding, remembering and
> carrying out simple and detailed instructions.  He is capable of
> paced tasks and routines of interest.  He should not frequently deal
> with the public.  [Citation omitted.]  The opinions of Dr. Johnson
> and Dr. LeBray are given significant weight.  However, we find he
> requires an option to change positions to relieve pain.  The opinion
> of Dr. Johnson supports a finding that given an option to change
> positions to relieve pain, the claimant is capable of performing
> light exertion work on a regular and continuing basis.  This assess-
> ment is consistent with the claimant's lack of treatment for pain
> complaints.
>
> The Circuit Court noted that the record is devoid of any medi-

> cal source statement from a treating physician regarding the
> claimant's physical capabilities.  Since the claimant has not
> received treatment since 1993, he has no treating physician
> to obtain a medical source statement from concerning the time
> period at issue.

Tr. 330-31.

Mason contends that the ALJ failed adequately to assess whether he is capable of

working on a "regular and continuing basis" because the ALJ failed to discuss the opinion of

reviewing psychologist Peter LeBray, Ph.D.  Dr. LeBray reviewed the medical record, and

opined in March 1997 that Mason would "often" suffer a deficiency in concentration, persistence

or pace.  Tr. 184. The ALJ chose to rely on the opinion of Dr. Johnson, supporting the

conclusion that with an opportunity to change positions, Mason can work on a regular and

continuing basis.  Both Drs. LeBray and Johnson based their opinions on review of the medical

records.  Where, as here, the evidence is susceptible to more than one rational interpretation, the

Commissioner's interpretation must be upheld.  *Andrews,* 53 F3d at 1039.

Mason argues that the ALJ violated SSR 96-8p by not conducting a function-by-function

analysis of his limitations.  However, the regulation does not require an ALJ to discuss a

claimant's limitations with respect to each of the fifty-four work functions.  *See* 20 CFR

§416.945.  Here, the ALJ discussed the relevant evidence and relied on the RFC findings of Drs.

Johnson and LeBray, and satisfied the requirements of SSR 96-8p.

Mason contends that the ALJ erred by failing to obtain a functional assessment from a

prior treating physician.  However, at the time of the March 1998 hearing, Mason had not seen a

treating physician since May 1993.  He was examined by Robert A. Berselli, M.D., in September

1996.  Dr. Berselli noted that Mason's range of motion was restricted by pain, and he had some

16  - FINDINGS AND RECOMMENDATION

sciatic notch tenderness bilaterally.  Neurologic examination of the lower extremities was

unremarkable, and x-rays of the lumbar spine, including oblique, fixion and extension views

were unremarkable.  Tr. 157.  An MRI was obtained on September 12, 1996, and Dr. Berselli

reported "a degenerated disc at L5-S1 but there is no evidence of any nerve root compression.  I

have informed the patient that there is no surgical treatment available."  Tr. 156.  The ALJ noted

Dr. Berselli's findings and opinion though he did not name the doctor.  Tr. 327. The ALJ did not

err by failing to contact Mason's former doctors for a functional analysis when those doctors had

not seen Mason for nearly five years.  The prediction of  functional limitations between 1996 and

2000 from doctors who last saw Mason in 1993 are not substantially more probative than the

assessment of limitations made by physicians reviewing the medical records in 1997. Mason

alleges disability between January 1996 and August 2000.  Evidence of functional limitations

existing in May 1993 would have some probative value, but the ALJ's failure to seek that

evidence is not error when substantial existing medical evidence supports the ALJ's RFC

determination.

 Sharon Johnson, M.D., prepared a Residual Physical Function Capacity Assessment in

February 1997.  After reviewing the medical record, she opined that Mason was limited to

occasionally lifting twenty pounds and frequently lifting ten pounds.  Tr. 161.  Dr. Johnson

found Mason could sit, stand or walk about six hours in an eight hour workday, and that he had

limited ability to crouch.  Tr. 161-62.  This opinion, in combination with the March 1997 opinion

of Dr. LeBray, constitutes substantial evidence upon which the ALJ properly relied.

 Mason contends that the ALJ failed to address the memory and reading limitations

identified by Dr. Powell.  Dr. Powell found that Mason's short term verbal logical memory

ability was below the 25th percentile compared to other adults within an average intellectual range. Tr. 151. As to reading, Dr. Powell said his ability "appears to be at about the third or fourth grade level." Tr. 153.

The Commissioner concedes that the ALJ failed to incorporate all limitations identified in the medical record as the ALJ did not include mental limitations in his RFC finding despite finding Mason's depression to be severe. The Commissioner argues that this error was harmless because neither Dr. LeBray nor Dr. Powell found that Mason's depression precluded his ability to work. Tr. 153, 187. This is consistent with Dr. Johnson's opinion. Tr. 161-62. None of the doctors identified mental limitations that precluded Mason's ability to perform his past relevant work as a stationary operator engineer, and therefore the ALJ's error was harmless.

Mason argues that the ALJ failed to consider the side effects from his medication. However, Mason said in February 1997 that he no longer took prescription medication because he got "too knocked out" and he did not want to become addicted. Tr. 173. Mason did not say when he had stopped taking prescription medication. There is no evidence from which the ALJ could conclude that side effects from medication lasted over a year in duration from his alleged onset date of January 2, 1996, and therefore the ALJ's failure to consider those side effects was not legal error.

## IV.  The ALJ Properly Found Mason Capable of Performing His Past Relevant Work

Mason argues that he is unable to perform his past relevant work because it required that he stand for four hours a day, and the ALJ found that he "is not able to stand more than 2 hours." Tr. 331. However, Mason's actual testimony was as follows:

> Q  What I'm trying to understand is you go to work. How much
>      of  the time, how many hours would you be sitting and how

many would you be standing and walking?

A  It was about 50/50.

Q  So you would be sitting four hours and standing and walking
   four hours.  Am I right?

A  Yes.

. . .

Q  Okay.  So you simply monitored the gauges and all?

A  Yes.

Q  And the controls?

A  Right.

. . .

Q  And you also had to do paperwork too?

A  Yes I did.

Q  So how, out of an eight hour shift how much time?

A  Every hour.  Every hour.  And everything that went in and out
   I had to do the paperwork on that.

Tr. 82-83; 81.

The evidence does not establish that Mason was required to stand for four hours a day

without the opportunity to sit or walk.  The ALJ's determination that Mason had the physical

capacity to return to his prior work is supported by substantial evidence.

Mason contends that the ALJ erred by failing adequately to compare his functional

capabilities to those required for his prior work.  Mason cites Social Security Ruling ("SSR") 82-

62, which provides in relevant part:

19  - FINDINGS AND RECOMMENDATION

> Detailed information about strength, endurance, manipulative ability,
> mental demands and other job requirements must be obtained as
> appropriate.  This information will be derived from a detailed de-
> scription of the work obtained from the claimant, employer, or
> other informed source....In addition, for a claim involving a mental/
> emotional impairment, care must be taken to obtain a precise description
> of the particular job duties which are likely to produce tension and
> anxiety, e.g., speed, precision, complexity of tasks, independent
> judgments, working with other people, etc., in order to determine
> if the claimant's mental impairment is compatible with the perfor-
> mance of such work.

Mason argues that failure to comply with the requirements of SSR 82-62 constitutes reversible

error, citing *Sivilay v. Apfel,* 143 F3d 1298 (9th Cir 1998).  The *Sivilay* Order  reads in full:

> We vacate the findings of the administrative law judge for the
> misapplication of Social Security Rulings 82-61 and 82-62.
> *See Henrie v. U.S. Department of Health & Human Services,*
>  13 F.3d 359, 360-61 (10th Cir. 1993).  On remand, we direct
> the administrative law judge to investigate fully the demands
> of the applicant's past work and compare them to the appli-
> cant's residual mental and physical capabilities.

According to the *Sivilay* appellate briefs, the ALJ found that the claimant could return to

past work as a shrimp peeler and cutter/paster.  The claimant was born in Laos in 1968.  She

went through the ninth grade, and spoke some English.  She could not read or write in either

Laotian or English.  In reaching his conclusion, the ALJ rejected the functional capacity

assessment of the claimant's treating psychiatrist that the claimant suffered from major

depression with psychotic features including hearing voices that made her angry, and post-

traumatic stress disorder.  The psychiatrist opined that the claimant had a poor capacity for

making occupational adjustments, a poor capacity for making performance adjustments, and a

poor capacity for making personal-social adjustments.  The ALJ found the claimant limited to

simple tasks and instructions of unskilled work.  The ALJ did not address the claimant's

testimony as to the prior work experience and the tools, machines, and interactions with
coworkers that occurred at the prior work places.  1997 WL 33572960.

In this case Mason and the VE testified regarding the physical and mental demands of
Mason's past work.  The VE is an "informed source" within the meaning of SSR 82-62.  The
testimony establishes that Mason's past work is light and skilled.    Mason has not pointed to any
credible  evidence, nor can this court find any evidence, that any of his limitations precluded his
ability to perform his past work during the time period at issue.  The ALJ properly relied on
Mason and the VE and properly found that Mason retained the residual functional capacity to
perform light work.

V.  The ALJ Properly Found Mason's Impairments Did Not Equal Listing 1.04(B)

Mason contends that his impairments equaled Listing 1.04(B).  Listing 1.04(B) involves
spinal arachnoiditis (inflammation of the spinal membrane) resulting in the need for changes in
position or posture more than once every two hours.  Mason argues that because Dr. Cohen
advised that Mason had to alternate posture or position more than once every two hours, his
impairment equaled Listing 1.04(B).

The Ninth Circuit Court of Appeals has already affirmed that Mason's impairments do
not meet or medically equal in severity a Listing.  Tr. 350.

VI.  Remand To Reopen Mason's April 1992 SSI Application Is Not Appropriate

Mason requests a remand for the Commissioner to reopen his April 1992 SSI application,
citing 20 CFR § 404.988 and 404.989.  Mason offers no argument or evidence as to how those
regulations apply to him, and this court should decline the opportunity to establish his legal
position.  Moreover, the issue is moot because the ALJ's determination that Mason was not

disabled during the relevant time period is supported by substantial evidence and should be affirmed.

## **RECOMMENDATION**

For these reasons, the Commissioner's decision should be affirmed and this matter should be dismissed and judgment should be entered.

## **SCHEDULING ORDER**

The above Findings and Recommendation will be referred to a  United States District Judge for review.  Objections, if any, are due August 21, 2006.  If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.  If objections are filed, a response to the objections is due fourteen days after the date the objections are filed and the review of the Findings and Recommendation will go under advisement on that date.

Dated this 4th day of August, 2006.


\_\_/s/ Paul Papak_____
PAUL PAPAK
United States Magistrate District Judge